IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REGINALD LOVE (#K-51286), )
  )
      Plaintiff, )
  ) Case No. 15 C 11549
      v. )
  )
SALVADOR GODINEZ et al., )
  )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

      Plaintiff Reginald Love, an Illinois prisoner, brought this action *pro se* pursuant to 42 U.S.C. § 1983, alleging that Defendants subjected him to unconstitutional conditions of confinement at Stateville Correctional Center ("Stateville") and retaliated against him when he filed grievances regarding the alleged conditions. Before the Court is Defendants' partial motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

**I.    Northern District of Illinois Local Rule 56.1**

      Northern District of Illinois Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)). Specifically, Local Rule

56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R. 56.1(a)(3); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 291 (7th Cir. 2015). The nonmoving party must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B); *Petty v. Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). The nonmoving party also may submit a separate statement of additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other materials relied upon to support those facts. L.R. 56.1(b)(3)(C); *see also Ciomber v. Coop. Plus, Inc.,* 527 F.3d 635, 643–44 (7th Cir. 2008).

The purpose of Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006). Also, "[t]he non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed." *Curtis*, 807 F.3d at 218–19; *see also Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."). Love's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*,

2

423 Fed. Appx. 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules.").

Because Love is proceeding *pro se*, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. 83.) The notice explained how to respond to Defendants' summary judgment motion and Rule 56.1 Statement and cautioned Love that the Court would deem Defendants' factual contentions admitted if he failed to follow the procedures delineated in Local Rule 56.1. Nonetheless, Love failed to respond to Defendants' undisputed facts. Instead, Love submitted two responses. The first contained his affidavit and the second contained additional declarations, which amount to the statements of three other inmate witnesses to the conditions they collectively endured at Stateville. (Dkt. 90 and 94.) The Court thus considers Defendants' statements of fact to which Love did not properly respond as admitted. Although Love's facts (affidavit) were not submitted in accordance with the Court's local rules and need not be considered, he may be able to testify about some of those facts and the Court acknowledges that he is proceeding *pro se*. To the extent Love's facts are supported by the record, the Court will consider them. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013). With these guidelines in mind, the following relevant facts are undisputed.

## II.     Relevant Facts

Love was incarcerated at Stateville during the time of the allegations. (Dkt. 82, ¶ 1.) Defendants Sievers and Donald Williams were F-House sergeants during the time of the allegations. (*Id*. at ¶¶ 2 and 3.) In addition, Defendants McGarvey and Hunter were majors during the time of the allegations. (*Id*. at ¶¶ 4 and 5.) Defendant Godinez was the Illinois Department of Corrections Director ("IDOC") from May 2, 2011 through December 31, 2014, and acting Department Director

from January 1, 2015 through March 1, 2015. (*Id*. at ¶ 6.) Defendant Knauer has worked as Administrative Review Board Member since December 2013. (*Id*. at ¶ 7.) Also, Defendant Lemke was the Warden at Stateville from January 1, 2013 to December 31, 2013. (*Id*. at ¶ 8.) Defendant Magana was the Acting Warden at Stateville from January 1, 2014 to January 16, 2014, and then the Warden from January 17, 2014 through March 31, 2014. (*Id*. at ¶ 9.) Further, Defendant McBee has served as a Grievance Officer at Stateville since July 2010. (*Id*. at ¶ 10.) Defendant Tarry Williams was the Warden at Stateville from April 1, 2014 to July 1, 2015. (*Id*. at ¶ 11.)

On or about July 24, 2013, Love was assigned to cell F-219. (*Id*. at ¶ 16.) Love stated on the record that he is not pursuing mental health damages. (*Id*. at ¶ 20.) In relation to cell F-219, the urine stained mattress did not cause Love any physical injuries nor did he receive treatment from a doctor regarding exposure to the urine stained mattress. (*Id*. at ¶¶ 21 and 22.) Love stated at his deposition that losing 3 to 4 hours of sleep per night while in cell F-219 did not cause him any physical injuries while he was housed there. (*Id*. at ¶ 23.) Love did not see a doctor for allegedly losing sleep 3 to 4 hours per night while in F-219. (*Id*. at ¶ 24.) Also, the cockroaches in F-219 did not cause him any physical injuries and he did not receive any medical treatment because of the cockroaches. (*Id*. at ¶¶ 25 and 26.) In addition, the cold air in cell F-219 did not cause him any physical injuries. (*Id*. at ¶ 27.)

On November 11, 2013, Love was reassigned to cell F-224. (*Id*. at ¶ 17.) Once Love was moved to cell F-224, he visited Dr. Larry, a mental health professional at Stateville, due to a lack of sleep. (*Id*. at ¶ 29.) Love testified at his deposition that while housed in cell F-224 (from November 11, 2013, to July 2, 2014), he suffered from stress and sleep deprivation due in part to the conditions in his cell. (Dkt. 87, pp. 35-36.) The doctor offered him treatment in the form of

4

sleep medication. (*Id*. and Dkt. 82, ¶ 33.) Further, Love alleges the toilet in cell F-224 did not function for five days, but this did not cause him any physical injuries and he received no medical treatment because of the non-functioning toilet. (*Id*. at ¶¶ 35 and 36.) The rain water that leaked into cell F-224 did not cause Love any physical injuries nor did he receive any medical treatment due to the water leaks. (*Id*. at ¶¶ 37 and 38.) Moreover, the mattress in cell F-224 did not cause Love any physical injuries. (*Id*. at ¶ 39.)

On January 15, 2015, Love was moved to cell F-245. (*Id*. at ¶ 19.) As to cell F-245, Love experienced the same cockroach infestation and cold air conditions that he experienced in the other F-House cells. (*Id*. at ¶ 41.) The cockroaches and cold air did not cause Love any physical injuries. (*Id*. at ¶ 42.) Love did not receive any medical treatment for the cockroaches and cold air he experienced in F-245. (*Id*. at ¶ 43.)

Love filed two grievances regarding his conditions of confinement – one on November 25, 2014 and the other on January 13, 2015. (*Id*. at ¶ 44.) The November 25, 2013 grievance was in regard to Love's conditions of confinement at Stateville in F-House and a disciplinary report. (*Id*. at ¶ 45.) On April 28, 2014, McBee reviewed the grievance and recommended the grievance be denied based on her investigation that the Department Rules were followed. (*Id*. at ¶ 46.) There were no other factors that contributed to McBee's recommendation. (*Id*.) When McBee made this recommendation, she did not have any personal knowledge as to Love, she did not have personal knowledge of Love's prior complaints, and she did not have personal knowledge that Love had filed grievances in the past. (*Id*. at ¶ 47.) On May 2, 2014, Tarry Williams' designee concurred with McBee's recommendation. (*Id*. at ¶ 48.) Williams did not review the grievance, he was not personally involved in reviewing or responding to it, and he does not have any personal knowledge

5

of the reasons for the denial of the grievance. (*Id*. at ¶ 49.)

On September 23, 2014, Knauer, as an Administrative Review Board Member, denied the grievance on the merits only and there were no other factors that contributed to Knauer's determination. (*Id*. at ¶ 50.) When Knauer reviewed the grievance, she did not have any personal knowledge of Love, whether Love complained about his living conditions to prison staff, or that he had filed grievances in the past regarding his living conditions. (*Id*. at ¶ 51.) Defendant Godinez's designee, Terri Anderson, concurred with Knauer's denial of Love's appeal of the grievance. (*Id*. at ¶ 52.) Godinez did not review Love's grievance and has no personal knowledge of Love's grievance or the Administrative Review Board's response to it. (*Id*. at ¶ 53.)

On January 14, 2014, Love filed a second grievance regarding his conditions of confinement. (*Id*. at ¶ 54.) On July 7, 2014, McBee reviewed the grievance and recommended denial of that grievance based on her investigation that the Department Rules were followed. (*Id*. at ¶ 55.) There were no other factors that contributed to McBee's recommendation. (*Id.*) When McBee reviewed the grievance, she did not have any personal knowledge of Love, she did not have any personal knowledge of Love's prior complaints, and she did not have personal knowledge that Love had filed prior grievances. (*Id*. at ¶ 56.) On July 8, 2014, Williams' designee concurred with McBee's recommendation. (*Id*. at ¶ 57.) Williams did not review Love's grievance, was not personally involved in reviewing or responding to it, and does not have any personal knowledge of the reasons for the denial of Love's grievance. (*Id*. at ¶ 58.)

On January 25, 2015, Knauer denied Love's second grievance based only on the merits. (*Id*. at ¶ 59.) There were no other factors that contributed to Knauer's determination. (*Id.*) When Knauer reviewed the grievance, she did not have any personal knowledge of Love, whether Love

complained about his living conditions to prison staff, or that he had filed grievances in the past regarding his living conditions. (*Id*. at ¶ 60.) Defendant Godinez's designee, Anderson, concurred with Knauer's denial of Love's appeal of the grievance. (*Id*. at ¶ 61.) Defendant Godinez did not review Love's second grievance and has no personal knowledge of the grievance or the Administrative Review Board's response to it. (*Id*. at ¶ 62.) Also, Love does not know why Knauer denied his grievances. (*Id*. at ¶ 63.) Love's only evidence that McBee retaliated against him is that she denied his grievance. (*Id*. at ¶ 64.)

Furthermore, Love alleges that Defendants retaliated against him by putting him back into F-House after he was housed in D-House. (*Id*. at ¶¶ 18 and 65.) Love does not know which Defendants decided to move him from D-House to a cell in F-House on January 15, 2015. (*Id*. at ¶ 66.) Moreover, Love does not know which Defendants knew that he was moved from D-House to F-House. (*Id*. at ¶ 67.) None of the Defendants had personal knowledge as to who Love was at the time of the allegations. (*Id*. at ¶ 68.) In addition, Defendants were not personally involved in Love's cell assignments and were not privy to the basis for Love's cell assignments. (*Id*. at ¶ 69.) Instead, the Placement Officer at Stateville assigns inmates to their cells. (*Id*. at ¶ 70.) Love testified that Defendant Hunter retaliated against him because Hunter did not remove him from the cell(s) he alleges contained unconstitutional conditions. (*Id*. at ¶ 71.) Love, however, does not know why Hunter gave him his cell assignments during the relevant time period. (*Id*. at ¶ 72.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106

7

S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

**I.     Eighth Amendment Conditions of Confinement Claim**

The Court first turns to Love's Eighth Amendment conditions of confinement claim. An Eighth Amendment violation based on the conditions of an inmate's confinement occurs when "(1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (internal quotation marks omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

In their Rule 56(a) motion for partial summary judgment, Defendants argue that Love has failed to present evidence that he suffered from a physical injury due to the alleged unconstitutional conditions he endured. Defendants argue that the Court should grant summary judgment because the Prison Litigation Reform Act ("PLRA") does not permit recovery without a showing of physical injury. *See* 42 U.S.C. § 1997e(e). Love, however, has set forth a sufficient showing that he

suffered a physical injury. *See e.g., Rasho v. Elyea,* 856 F.3d 469, 477 (7th Cir. 2017). More specifically, Love testified at his deposition that he lost sleep while housed in cell F-224 from November 11, 2013 to July 2, 2014. He also testified that a doctor treated him for his resulting stress and sleep deprivation and that his sleep deprivation was due, at least in part, to being cold, "frozen to death" and with cockroaches crawling all over him. (Dkt. 87, pp. 35-36.)

To prove unconstitutional sleep deprivation, Love must "adduce evidence that he is being deprived of his sleep on a regular and sustained basis and that the sleep deprivation has affected his physical health." *Williams v. Berge*, 2002 WL 32350026, at *4 (W.D. Wis. Apr. 30, 2002). Another judge in this district has concluded that "the court can think of no reason why sleep deprivation and headaches would not constitute physical injury." *Gurley v. Sheahan*, Case No. 06 C 3454, 2009 U.S. Dist. LEXIS 62995, *21 (N.D. Ill. July 21, 2009).[1] Accordingly, Love has presented sufficient evidence – viewed in his favor – that raises a triable issue of fact whether he has suffered physical injury sufficient to justify the recovery of compensatory damages. The Court denies this aspect of Defendants' partial motion.

## II.     First Amendment Retaliation Claim

Defendants next move for summary judgment on Love's retaliation claim arguing that he has failed to set forth any evidence of retaliation. To survive a motion for summary judgment on this claim, Love must present evidence raising a genuine issue of material fact that: (1) he engaged in activity protected under the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was at least a motivating factor for the retaliatory action. *See Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017); *Perez v.*

---

[1] The Court further notes that the Seventh Circuit has signaled disfavor in granting summary judgment on the issue of whether compensatory damages are available in cases governed by the PLRA. *See Turner v. Pollard*, 564 Fed. Appx. 234, 238-39 (7th Cir. 2014).

*Fenoglio,* 792 F.3d 768, 783 (7th Cir. 2015). Defendants assume, as does the Court, that Love's prison grievances regarding the conditions of his confinement are protected activities for the purposes of his First Amendment retaliation claim.[2] *See Perez,* 792 F.3d at 783 ("filing a non-frivolous grievance is a constitutionally protected activity sufficient to support a retaliation claim.").

The record in this case indicates that Love filed two grievances regarding his conditions of confinement during the relevant time period – one on November 25, 2014 and the other on January 13, 2015. Examining the evidence and all reasonable inferences in Love's favor – as the Court is required to do at this procedural posture – Defendant McBee reviewed both grievances and denied both based on her investigation and determination that Department rules had been followed. Aside from her knowledge of these two grievances, it is undisputed that Defendant McBee had no prior knowledge of Love or any grievances he might have filed. The warden's designee concurred with McBee's denial of the grievances and the warden did not review the grievances himself. At IDOC, Knauer, a member of the Administrative Review Board, denied Love's appeals of the two grievances on the merits and without any personal knowledge of Love or any history he might have had with filing grievances. Director Godinez's designee concurred with Knauer's denial of the appeals of the grievances and Director Godinez did not review the grievances personally.

Moreover, Love has failed to present sufficient evidence raising a triable issue of fact that the filing of his grievances, namely the protected activity, caused the alleged retaliation. More specifically, Love believes that his being transferred back to F-House from D-House, on January 15, 2015 was retaliation for the two grievances that he had filed on November 25, 2014 and January 13,

---

[2] Given Defendants' assumption, the Court need not address two Seventh Circuit decisions regarding this issue. *Compare Herron v. Meyer*, 820 F.3d 860, 863-64 (7th Cir. 2016) (questioning whether all complaints submitted through grievances are protected speech); *with Ogurek v. Gabor*, 827 F.3d 567, 569 (7th Cir. 2016).

2015. At his deposition, however, Love testified that he did not know why Defendant Knauer denied the appeals of his grievances and he believes it was retaliation simply because Knauer denied the grievance. Nonetheless, the record indicates that the Stateville's Placement Officer is authorized to make cell assignments and none of the Defendants in this case held that position. Equally important, while the move was close in time to when Love filed the grievances, the record contains no evidence that the grievances or any other First Amendment protected activity were a motivating factor behind Love's transfer back to F-House. *See Archer*, 870 F.3d at 618; *Perez*, 792 F.3d at 783. Therefore, without evidence that his grievances were a motivating factor behind Love's transfer to F-House, his First Amendment retaliation claim fails. Moreover, in Love's responses to Defendants' summary judgment motion, he does not address retaliation at all, but instead focuses on his conditions of confinement claim. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) (failing to respond to defendants' arguments amounts to waiver of claims). Thus, the Court grants Defendants' motion as to Love's retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for partial summary judgment [80]. The Court dismisses Love's claim for retaliation with prejudice. Love may proceed on his Eighth Amendment conditions of confinement claim.

**Dated:** May 7, 2018

                                            **ENTERED**

                                          *[signature]*

                                        **Amy J. St. Eve**
                                        **United States District Court Judge**